**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOSEPH L.,[1]** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:22-CV-02115-NJR** |
| **MARTIN O'MALLEY,**<br>**Commissioner of Social Security,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Joseph L. ("Plaintiff") appeals to the district court from a final decision of the Commissioner of Social Security denying his application for Child Disability Benefits and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is affirmed.

### PROCEDURAL HISTORY

Plaintiff applied for Child Disability Benefits and SSI on January 30, 2020, alleging disability beginning on October 31, 1996.[2] (Tr. 20, 242-52). Plaintiff based his claims on several mental health, developmental, and intellectual disorders. (Tr. 23). The application was initially denied on November 16, 2020 (Tr. 67-136, 168-75), and it was denied upon

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See FED. R. CIV. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] While Plaintiff alleged an onset date of October 31, 1996, the onset date can only be the day before Plaintiff's 18th birthday—October 30, 2014—as this is a claim for Child Disability Benefits. (Tr. 20, 179). Further, Child Disability Benefits are only paid to a person age 18 or older if the person had a disability which began before age 22. (Tr. 20, 179). The relevant date is the day before Plaintiff's 22nd birthday, October 30, 2018. (Tr. 20).

reconsideration on April 27, 2021. (Tr. 137-40, 176-82). Plaintiff timely requested a hearing, and Administrative Law Judge Lori Imsland ("ALJ") held a telephonic hearing on January 26, 2022, at which Plaintiff, his attorney, and a vocational expert ("VE") appeared. (Tr. 41-66, 183-91, 207-16, 228, 232-36).

The ALJ issued an unfavorable decision on February 3, 2022, finding that Plaintiff was not disabled because he had the residual functional capacity ("RFC") to perform a reduced range of light work and could perform a significant number of jobs in the national economy. (Tr. 17-40). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Plaintiff now appeals that decision directly to this Court, raising one issue: whether the ALJ erred by failing to incorporate all the relevant limitations supported by the record in the RFC assessment and the hypothetical question posed to the VE. (Doc. 21). The Commissioner timely filed a brief in opposition. (Doc. 27).

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The scope of review is limited and, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" *Id.* The Supreme Court defines substantial evidence as "more than a mere scintilla" and "means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the entire administrative record is taken into consideration, but the reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination[.]" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). When an ALJ ignores an entire line of evidence contrary to the ruling, however, it makes it impossible for a district court to assess whether the ruling rested on substantial evidence. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Ignoring evidence in this way requires the district court to remand to the agency. *Golembiewski*, 322 F.3d at 917.

## LEGAL STANDARD

To qualify for Child Disability Benefits or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

A "physical or mental impairment" is an impairment resulting from anatomical,

---

[3] The statutes and regulations governing child disability benefits and SSI are codified separately, but those relevant to this case are practically identical. Thus, except where otherwise appropriate, the Court will refer only to the regulations for disability benefits found at 20 C.F.R. §§ 404.1500-404.1599. The equivalent SSI regulations may be found at 20 C.F.R. §§ 416.900-416.999. Moreover, the relevant statute for disability benefits is 42 U.S.C. § 423, and the relevant statute for SSI is 42 U.S.C. § 1382, 1382c.

physiological, or psychological abnormalities demonstrated by medically acceptable diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that is both substantial and gainful involving performing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572.

To render a decision after a Social Security hearing, an ALJ considers five questions in determining whether a claimant is disabled: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity? (4) Does the claimant's residual functional capacity leave him or her unable to perform his or her past relevant work? and (5) Is the claimant unable to perform any other work existing in significant numbers in the national economy? *See* 20 C.F.R. § 404.1520; *Milhem v. Kijakazi,* 52 F.4th 688, 691 (7th Cir. 2022).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The claimant bears the burden of proof at steps one through four. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

## EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the

sole point raised by Plaintiff.

## I.     Evidentiary Hearing

Plaintiff appeared via telephone and was represented by counsel at the hearing on January 26, 2022. (Tr. 41-66). VE John Steven Dolan also testified by telephone. (Tr. 62-65).

Plaintiff testified that he resides with his mother. (Tr. 47-48). Plaintiff also testified that he has anxiety and stress resulting from the anxiety, which cause his hands to shake, his anger to build, and his mind to shut down. (Tr. 48). Plaintiff dreads large groups of unknown people and spends most of his time with his mother, father, and other family members. (*Id.*). When he experiences anger, Plaintiff isolates himself, which occurs up to two to three times a month. (Tr. 49). Plaintiff testified that he is not the best at remembering hygiene-related tasks or taking his medication, so he relies on reminders from his mother. (Tr. 49-50). Plaintiff exhibits an erratic sleep pattern, and if he wakes up early, he usually needs a nap later. (Tr. 50-51).

In response to a question from the ALJ, Plaintiff stated that he does not have trouble walking or standing, but occasionally gets leg cramps. (Tr. 52). He also noted that he would not likely have the patience to stand for a six-hour workday, but physically he might be able to do so. (*Id.*). Plaintiff explained that he has never applied for or tried a part-time job, but neither his doctor or former teachers advised him against working or trying to find work. (Tr. 53-54). To fill his time, Plaintiff enjoys video games (Halo, Mass Effect, role-playing games, etc.), YouTube, and occasionally taking his dog outside to walk in the yard. (Tr. 54-55). Mostly, Plaintiff plays video games alone and has had trouble getting along with others online. (Tr. 55-56). Plaintiff claimed that he never

learned how to cook or do laundry. (Tr. 57-58). He performs some cleaning tasks but not cleaning floors or other big jobs. (Tr. 57). Before the pandemic, Plaintiff went to Walmart once a month and, in doing so, he kept to himself and proceeded to the electronic section to view video games. (Tr. 58-59). Plaintiff also attended college courses at Southwestern Illinois College but dropped out shortly before the pandemic because of anxiety from the crowds. (Tr. 59). Plaintiff cannot drive and has never attempted to procure a driver's license due to his road rage. (Tr. 60).

The ALJ instructed the VE, John Steven Dolan, to assume a hypothetical individual of Plaintiff's age and education, having no past work, with these additional limitations: work at light exertion level; able to learn, remember, and carry out simple, routine tasks; able to use reason and judgment to make simple, routine-related decisions; able to work in an appropriate and consistent pace while performing simple routine tasks; able to complete tasks in a timely manner; able to ignore or avoid distractions while performing simple, routine tasks, but must have only gradual changes in job setting and duties; able to sustain ordinary routine and regular attendance at work while performing simple, routine tasks; able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks; can have no contact with the general public, but is able to occasionally work close to or with co-workers and supervisors without interrupting them or distracting them while performing simple, routine tasks. (Tr. 62-65). After describing this hypothetical individual, the ALJ asked Dolan if this person could perform any work in the national economy. (*Id.*). Dolan testified that there are jobs suitable to someone with those

restrictions including a housekeeping or cleaner job, cafeteria attendant, or mailroom clerk. (*Id.*). Dolan also testified that regular, unapproved absences in these identified roles would likely not be tolerated, and off-task behavior may be tolerated for 10 to 20 percent of the workday. (*Id.*).

## II.    Relevant Medical Records

From early schooling through high school, Plaintiff worked under an Individualized Education Plan ("IEP"). (Tr. 332-87). His IEP demonstrates that he suffered from an "other health impairment" that impacted his classroom progress because he avoided completing his assignments or participating in class activities, struggled to manage his frustration, stress, and anger, and made inappropriate comments to peers and staff. (Tr. 340, 352, 357-59, 373). Throughout the years, his behavioral issues improved, and Plaintiff graduated high school. (Tr. 333, 337, 352). He went on to complete some college at Southwestern Illinois College but eventually dropped out. (Tr. 59).

The record includes documentation from many visits with physician Narsimha Muddasani, M.D., from 2013 to 2021, mostly for medication management. (Tr. 394-483, 489-500). Dr. Muddasani's examination notes often reflected Plaintiff's obesity; euthymic mood; clear speech; lack of hallucinations, agitation, aggression, suicidal or homicidal thoughts; average intelligence; appropriate grooming; cooperative and calm demeanor; bipolar diagnosis; and his ongoing, unchanged Saphris and Topamax/topiramate prescriptions. (*Id.*). In December 2013 and April 2014, Dr. Muddasani characterized Plaintiff's insight and judgment as fair. (Tr. 498). Four months later, Plaintiff's insight and judgment was rated as poor but three months after that assessment, Dr. Muddasani again

evaluated Plaintiff's insight and judgment as fair. (Tr. 441, 497). In 2016, Plaintiff met with Dr. Muddasani and reported mood swings, decreased need for sleep, restlessness, irritability, and euphoria. (Tr. 421). Despite these reports, his medication regimen remained the same, and his mental status exam appeared normal. (Tr. 421-22).

Plaintiff saw his primary care provider on three occasions in early 2016, who evaluated his obesity, noted his bipolar disorder, and observed normal affect and mood during the visit. (Tr. 424-29). In 2019, Dr. Muddasani began charting Plaintiff's intelligence as below average, after years of charting average intelligence, along with adding hyperactive and oppositional behavior to the mental status exam findings. (Tr. 394-403, 447-49). Dr. Muddasani entered an additional diagnosis in January 2020 for generalized anxiety disorder and prescribed Klonopin for treatment. (Tr. 397-98). At this visit, Dr. Muddasani noted, "pt is unable to care for himself, and needs the assistance of his mother to care for him. pt has mood swings and anxiety will most likely last for the next 12 months or more." (Tr. 398). Plaintiff received counseling on the importance of exercise. (*Id.*).

In 2021, Plaintiff met with Dr. Muddasani three times via phone, and the chart contains no mention of Plaintiff's ability to care for himself but does evidence the same diagnoses and prescriptions as before, along with the same mental status exam results. (Tr. 469-76). At one of these visits, Dr. Muddasani charted that Plaintiff began snapping on everyone and had a nervous habit. (Tr. 469-71). In April 2021, Plaintiff reported for a physical consultative examination with Adrian Feinerman, M.D., who found no physical limitations to Plaintiff's ability to work but assessed a diagnosis of obesity. (Tr. 453-62).

### III.    State Agency Examiners

State agency psychological consultant Joseph Mehr, Ph.D., reviewed Plaintiff's treatment records in June 2020, and he found that Plaintiff had the medically determinable impairments of obesity, depressive, bipolar and related disorders, anxiety and obsessive-compulsive disorders, and attention deficit/hyperactivity disorder, and that each impairment qualified as "severe." (Tr. 74). Relevant to the pending appeal, Dr. Mehr determined that Plaintiff had a moderate limitation in the broad functional area of concentration, persisting, or maintaining pace ("CPP"). (*Id.*). Dr. Mehr then conducted a mental RFC assessment for Plaintiff and found that Plaintiff had a moderate sustained concentration and persistence limitation in carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, and working closely to others without becoming distracted by them. (Tr. 77). In summary, Dr. Mehr explained that Plaintiff had the ability to maintain attention and concentration, adhere to a schedule on a sustained basis, and complete work activities with simple instructions, and Plaintiff could make simple, work-related decisions. (Tr. 79). In 2021, another state agency psychological consultant, Melanie Nichols, Ph.D., affirmed this assessment. (Tr. 125-34).

On reconsideration, state-agency medical consultant Dr. Frank Mikell noted that Plaintiff alleged more mood swings and inability to follow directions. (Tr. 114-25). Dr. Mikell determined there was insufficient evidence to decide as to disability. (*Id.*).

Back in 2015, related to Plaintiff's prior disability claim, state agency psychological examiner Joan Singer, Ph.D., assessed a mild limitation in CPP. (Tr. 145). In reaching this

conclusion, Singer found Plaintiff moderately limited in two areas: the ability to maintain attention and concentration for extended periods and the ability to work in coordination with or in proximity to others without being distracted by them. (Tr. 148). To explain further, Singer wrote a short narrative explaining that Plaintiff may have some mild limitations in his ability to maintain attention and concentrate for extended periods of time and to work near others considering his mood changes and reported anger. (*Id.*).

### DECISION OF THE ALJ

In reaching her decision, the ALJ considered the hearing, including testimony from Plaintiff and the impartial VE. She also considered Plaintiff's medical records and the opinions of the state agency psychological and medical consultants. (Tr. 20-36).

At step one, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since the onset date of October 30, 2014. (Tr. 23). At step two, the ALJ concluded that Plaintiff had the following severe impairments: borderline intellectual functioning, mood disorder, anxiety disorder, pervasive developmental disorder, history of attention deficit hyperactivity disorder ("ADHD"), and obesity.[4] (*Id.*).

Moving to step three, the ALJ found that Plaintiff's impairment did not meet or medically equal the severity of one of the impairments listed in the regulations. (*Id.*). Specifically, the ALJ noted that the record demonstrated Plaintiff's moderate impairment in the broad functional areas of understanding, remembering, and applying information,

---

[4] Plaintiff's mother alleged that Plaintiff has issues with his hands, however, the ALJ found no support in the record for this assertion. (Tr. 23). Further, the ALJ found the allegations contradicted Plaintiff's reported ability to play video games frequently. (*Id.*). Thus, the ALJ found that any hand-related issue was not a medically determinable impairment. (*Id.*).

interacting with others, CPP, and adapting or managing himself. (Tr. 23-24). Further, the ALJ found that Plaintiff's mental impairments persisted for over two years, and he relied on outpatient therapy and outpatient medication management. (Tr. 24). But the ALJ found that the record failed to show Plaintiff only achieved marginal adjustment. (*Id.*).

The ALJ determined that Plaintiff had the RFC to perform unskilled, light work with the following non-exertional limitations: (1) Plaintiff could learn, remember, and carry out simple, routine tasks; (2) Plaintiff could use reason and judgment to make simple, routine work-related decisions; (3) Plaintiff could work at an appropriate and consistent pace while performing simple, routine tasks; (4) Plaintiff could complete simple, routine tasks in a timely manner; (5) Plaintiff could ignore or avoid distractions while performing simple, routine tasks; (6) Plaintiff must experience only gradual changes in job setting and duties; (7) Plaintiff could sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; (8) Plaintiff could work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks; (9) Plaintiff cannot have contact or interact with the general public; and (10) Plaintiff can occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks. (Tr. 26-35). In making this finding, the ALJ considered the objective medical evidence and Plaintiff's testimony regarding his symptoms finding that his medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 27). The ALJ concluded, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other

evidence in the record. (Tr. 27-28).

In step four, the ALJ determined that Plaintiff has no past relevant work. (Tr. 35). Finally, at step five, based on the testimony of the VE, the ALJ concluded that, "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 36).

Considering all the above, the ALJ found Plaintiff was not under a disability, as defined in the Social Security Act, from October 31, 1996, through February 3, 2022. (Tr. 36).

## DISCUSSION

## I.   Did the ALJ include all the supportable limitations in the RFC assessment and the hypothetical scenario posed to the VE?

Plaintiff argues that the ALJ failed to incorporate all of Plaintiff's limitations into the RFC determination and the hypothetical question posed to the VE. (Doc. 21). Specifically, Plaintiff contends that the ALJ disregarded his moderate limitation in maintaining CPP, assessed by the ALJ at step three, in finding that Plaintiff could "work at an appropriate and consistent pace while performing simple, routine tasks" and could "complete simple, routine tasks in a timely manner." (*Id.*). For support, Plaintiff points to his mother's third-party report of his inability to focus, his treating physician's opinion that he is seriously limited in maintaining CPP, and the state-agency psychological consultants' assessments of moderate limitation in the broad area of CPP. (*Id.*). Plaintiff also emphasizes the Seventh Circuit's repeated holding that limitation to simple

instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining CPP. (*Id.*). Ultimately, Plaintiff argues that this error warrants remand because he cannot reasonably work at an "appropriate and consistent pace" with a moderate limitation in maintaining CPP or reasonably complete his work in a "timely manner." (*Id.*).

In response, the Commissioner argues that the ALJ supported her RFC assessment with ample evidence including treatment notes, Plaintiff's self-reports, and the findings from state agency psychological consultants. (Doc. 27). The Commissioner avers that having a moderate limitation in the broad functional area of maintaining CPP does not translate to a moderate limitation in each of the three subcategories. (*Id.*). Furthering that argument, the Commissioner asserts that Plaintiff does not offer any evidence of a pace-related limitation necessary for inclusion in the RFC or question to the VE. (*Id.*). According to the Commissioner, the state agency psychological consultants further explained the moderate CPP limitations in narrative form stating that Plaintiff could maintain attention and concentration and adhere to a schedule on a sustained basis when restricted to simple instructions and simple work-related functions or decision-making. (*Id.*). Thus, the Commissioner concludes that limiting Plaintiff to simple, routine tasks, in this specific circumstance, accounts for his moderate limitation in CPP. (*Id.*).

The Seventh Circuit has reiterated that an ALJ's RFC assessment and the hypothetical question presented to the VE must account for all limitations supported by

the medical record, including limitations in maintaining CPP.[5] *Varga v. Colvin*, 794 F.3d 809, 813-14 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). In crafting both an RFC and hypothetical question, ALJs must be careful not to conflate limitations to "simple, repetitive tasks" with limitations that address deficiencies of CPP. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). As the Seventh Circuit has "labored mightily to explain," the ability to persist with "a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity," and "the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace." *Id.*; *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). A restriction to simple tasks is *generally* insufficient to account for moderate CPP limitations, but each assessment must be individualized to the claimant's specific symptoms. *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020).

Unsurprisingly, no specific terminology or magic words must be used in the hypothetical question, but the question must sufficiently equip the VE with the "totality of a claimant's limitations," including moderate deficiencies in CPP. *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019). While terms like "simple, repetitive tasks" may not necessarily exclude positions presenting significant problems of CPP from the VE's consideration, an ALJ's alternative phrasing that specifically excludes the tasks that

---

[5] As an exception to this general rule, shortcomings in the hypothetical question may be forgiven if the VE has independently reviewed the medical record or heard testimony directly addressing the omitted limitations. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018). Here, there is no evidence in the record, nor does either party contend, that the VE independently reviewed Plaintiff's medical records.

someone with the claimant's limitations could not perform may be appropriate. *Id.* Moreover, an ALJ may reasonably rely on the opinion of a medical expert who translates a limitation into an RFC determination. *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019).

Here, at step three, the ALJ assessed that Plaintiff had a moderate limitation in CPP. After that determination, to craft the RFC, the ALJ thoroughly summarized the available evidence with much more detail, including Plaintiff's testimony and self-reports, his mother's reports, his treating physician's records and opinion, and the state psychological consultative exams. Specific to evidence demonstrating limitations in CPP, the ALJ noted that Plaintiff "asserted difficulty taking medications without reminders, going out alone, paying bills, completing tasks, concentrating, following instructions, using his hands, handling stress and coping with changes in his routine." His mother's report indicated the same, except that she stated that Plaintiff could not focus enough to get a driver's license, whereas Plaintiff stated that he had no interest in driving due to road rage. The ALJ also considered Plaintiff's described daily activities like attending some college, making friends, playing video games, spending time with family, taking care of his dog, preparing simple meals, keeping his room clean, and taking out the trash.

In analyzing Plaintiff's IEP, the ALJ noted Plaintiff's improvement during his time in high school with behavioral issues and interpersonal conflict. The ALJ acknowledged Plaintiff's borderline range IQ scores, but emphasized his ability to complete regular schoolwork, graduate high school, and attend some college. The ALJ also highlighted many records of Plaintiff's medication management appointments, which occurred every

few months. In 2014, Dr. Muddasani prescribed Saphris and Topamax to address Plaintiff's bipolar disorder. While on these medications, the appointment documentation consistently captured Plaintiff's alert orientation, appropriate dress and grooming, normal cognition, normal affect, euthymic mood, average intelligence, logical thought process, and fair insight and judgment. Starting in 2016, some of the records reflected hyperactivity and oppositional behavior. For several years, Plaintiff's medications remained unchanged. In 2020, Klonopin was added for anxiety. Moreover, despite several years of documenting average intelligence, Dr. Muddasani began recording below average intelligence in 2019, which the ALJ found consistent with Plaintiff's IQ testing. The ALJ emphasized the minimal change in treatment or medication even with reference to a decrease in intelligence and increased hyperactivity.

Next, the ALJ described a physical consultative examination conducted by Adrian Feinerman, M.D., in 2021. The examination primarily concerned Plaintiff's physical limitations and obesity, but Dr. Feinerman noted that Plaintiff appeared alert and oriented and that he exhibited normal appearance, behavior, memory, concentration, and ability to relate. The ALJ also reviewed the state agency psychological consultants who assessed a moderate limitation in maintaining CPP. The consultants—Dr. Mehr, and later, Dr. Nichols affirming—found moderate limitations related to CPP in four areas: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; and the ability to work in coordination with or in proximity to others without being distracted by them. The psychological consultants found Plaintiff was not

significantly limited in the other areas in the broad CPP category — the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to make simple work-related decisions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; and the ability to carry out very short and simple instructions. The narrative portion of the CPP finding states that Plaintiff is "able to maintain attention and concentration, and adhere to a schedule on a sustained basis, and complete work activities including the abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of simple work related (sic) activities, i.e., simple work-related decisions." (Tr. 133-34).

The ALJ also reviewed state agency psychological and medical consultant findings from 2015 related to a prior application. Those examiners assessed only mild limitations in CPP. The psychological consultant, utilizing the old rules related to mental health listings, assessed Plaintiff to have moderate limitations in his ability to maintain attention and concentration for extended periods and his ability to work in coordination with others without being distracted. In narrative form, the psychological consultant explained that "Claimant may have some mild limitations in his ability to main[tain] attention and concentrate for extended periods of time. He may also have difficulty working in close proximity to others due to mood changes and reported anger." (Tr. 148). The ALJ found these assessments consistent with her RFC.

Lastly, the ALJ considered Dr. Muddasani's medical source statement. The ALJ

found support in the medical record and evidence for Dr. Muddasani's conclusions that Plaintiff had a good ability to understand, remember, and carry out simple job instructions, fair ability to do the same for detailed, but not complex job instructions, and no ability to perform complex tasks. As such, the ALJ found this portion of Dr. Muddasani's opinion persuasive. But the ALJ characterized the rest of the medical source statement as extreme and unsupported by the record. For example, Dr. Muddasani opined that Plaintiff could not follow work rules, use judgment, function independently, or relate predictably in social situations, which the ALJ found completely unsupported by the record where the mental status examinations overwhelmingly notated normal findings from 2014 to 2021. Dr. Muddasani routinely recorded Plaintiff's happy, pleasant affect and intact insight and judgment. Dr. Muddasani also surmised that Plaintiff would be unreliable, absent from work at least two days per month, and off task 60 percent of the time. The ALJ noted a lack of support in the record for these extreme assertions. Moreover, Dr. Muddasani listed pervasive developmental disorder as one of Plaintiff's diagnoses, but the record contains no other reference to this disorder, not even in Dr. Muddasani's own treatment notes. Thus, the ALJ discredited some of Dr. Muddasani's opinions as inconsistent with the entirety of the available medical evidence and did not incorporate them in the hypothetical posed to the VE.

Based on all the summarized evidence, the ALJ accounted for Plaintiff's moderate limitation in CPP by limiting him to: performing simple, routine tasks, where he could achieve an appropriate and consistent pace, complete tasks in a timely manner, and sustain an ordinary full-day routine, with the allotted breaks; using reason and judgment

to make simple routine-related decisions; experiencing only gradual changes in job setting and duties; and occasionally working closely with coworkers and supervisors without interrupting or distracting them. These limitations were also reflected in the hypothetical question posed to the VE.

Certainly, the ALJ did not utter the phrase "moderate limitation in concentration, persistence, or pace" in posing the hypothetical to the VE but did limit Plaintiff to simple, routine tasks. With a passing glance, this may seem like a familiar situation where an ALJ commits the cardinal sin of relying on a limitation to simple, routine tasks or unskilled work, in a sweeping manner, to account for a claimant's full range of problems with CPP. *See Crump v. Saul*, 932 F.3d 567, 570-71 (7th Cir. 2019); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009). But upon closer examination, the ALJ's RFC determination and hypothetical question adequately accounted for Plaintiff's specific limitations in CPP. While the state agency psychological examiners assessed a moderate limitation in CPP, they found no significant limitation in Plaintiff's ability to perform at a consistent pace and further explained that Plaintiff could maintain attention and concentration, adhere to a schedule on a sustained basis, complete work activities, and make judgments and decisions when assigned simple instructions and simple work-related activities. The state agency psychological examiners' narrative assessments translated their findings in each broad functional category to reveal that Plaintiff's limitations in CPP are triggered by more complex or detailed work. This is further supported by Dr. Muddasani's opinion that Plaintiff possessed a "good" ability to perform simple job instructions. Moreover, the ALJ accounted for Plaintiff's moderate limitation in one of the CPP categories by limiting

him to the occasional ability to work in coordination with or in proximity to coworkers or supervisors without distraction or interruption. The ALJ's hypothetical question included the same restrictions that the state agency psychological examiners, Dr. Mehr and Dr. Nichols, stated would accommodate Plaintiff's limitations. The ALJ's reliance on those medical opinions was permissible. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

Furthermore, in developing the RFC, the ALJ permissibly discredited portions of Dr. Muddasani's medical source opinion. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("A treating physician's opinion is entitled to controlling weight unless it is 'inconsistent with the other substantial evidence.'"). In doing so, the ALJ explained that the opinion was extreme in nature and lacked support in the record, specifically with the assessment of Plaintiff's foreseeable absences and off-task behavior. Though the treating physician's opinion is entitled to controlling weight, the ALJ reasonably discredited portions of the opinion inconsistent with the bulk of the other substantial evidence, like his years of conservative medical treatment and normal mental status findings along with his IEP that demonstrated continued behavioral improvement. To the extent that Plaintiff specifically argues that the ALJ erroneously found he could work at an "appropriate and consistent pace," Plaintiff identifies no pace-related restrictions in the medical evidence to contradict this assessment. *See id* at 508. (holding that a plaintiff must "identify medical evidence that would justify further restrictions" for remand.) To the contrary, the state agency psychological consultants indicated that Plaintiff suffered no significant limitation in "the ability…to perform at a consistent pace without an unreasonable

number and length of rest periods."

As explained above, the ALJ's RFC assessment and hypothetical question were supported by the medical evidence in the record and incorporated all of Plaintiff's supportable limitations in CPP. Moreover, the ALJ's limitations to simple, repetitive tasks properly reflected Plaintiff's evidenced psychological symptoms and aligned with the state agency psychological assessments, and, thus, accounted for his moderate limitations in CPP. Here, remand is not required.

## CONCLUSION

For these reasons, the Commissioner's final decision denying Plaintiff's application for supplemental security income and social security disability benefits is **AFFIRMED**, and this action is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security.

**IT IS SO ORDERED.**

**DATED:   March 13, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**